IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRY L. CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:22-cv-00265-JAR |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **OPINION AND ORDER**

Plaintiff Sherry L. Campbell ("Claimant") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision by the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 423, 1382. Claimant now appeals the unfavorable decision of the Administrative Law Judge ("ALJ"), asserting the Commissioner erred because the ALJ determined she was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### I.   SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id*. § 324(d)(2)(A).

The Social Security Administration (the "Agency") regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment; (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of a claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. *Id*. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined at any step that the claimant is or is not disabled, further evaluation is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v.*

*Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja*, 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.  CLAIMANT'S BACKGROUND AND MEDICAL HISTORY

Claimant was 57 years old at the time of the ALJ's decision. [Administrative Record ("R.") 23, 71, 306]. She completed her high school education and worked in the past as a certified nursing assistant ("CNA"). [R. 23, 242]. Claimant alleges an inability to work beginning November 20, 2019 [R. 16, 199], due to limitations resulting from generalized anxiety disorder, hypertension, major depressive disorder, hiatal hernia, throat problem, scoliosis, degenerative disc disease, and rheumatoid arthritis of the back, hands, and wrists. [R. 126, 197, 306-07].

### A.  Claimant's Physical Health History

In May, July, and August 2019, James Kim, M.D., noted Claimant's complaints of intermittent bilateral numbness of the right arm and hand, intermittent neck pain, and shoulder pain. [R. 327-29, 331-33, 336]. In March 2020, Rebecca Hale, N.P., noted

3

Claimant's complaints of muscle and joint pain. [R. 355-57]. Two medical professionals reviewed the record at the Agency's request on May 29 and June 1, 2020. Both providers completed prior administrative findings ("PAMFs") that because additional information was needed to fully document Claimant's disability claim, there was insufficient evidence to show her conditions as disabling. [R. 76, 78].

On June 8, 2020, a CT scan of Claimant's right knee revealed a small suprapatellar effusion and a Baker's cyst. [R. 482]. A physician's assistant ("PA") administered a contemporaneous exam and noted limping with decreased right knee flexion, extension, and internal rotation. [R. 481]. In August 2020, Tommie Stanberry, PA – Claimant's primary treating provider from 2020 onward – examined Claimant and noted bilateral lumbar spine tenderness and muscle spasms with motion. [R. 472-73]. In October 2020, an associate of PA Stanberry noted Claimant's complaints of chronic back pain. [R. 462-63]. In November 2020, PA Stanberry observed lumbar back pain with intermittent muscle spasms. [R. 459]. Two medical professionals reviewed the record at the Agency's request in late-January 2021. Both providers completed PAMFs concluding there was insufficient evidence to evaluate Claimant's disability claim. [R. 100, 103].

In June 2021, Claimant reported "more noticeable" pain in her neck radiating to the left shoulder, as well as numbness/tingling of her left shoulder/arm [R. 393]. A contemporaneous exam by PA Stanberry confirmed pain on palpation, decreased motion of Claimant's left shoulder, and numbness to touch on her lateral side. [R. 394]. PA Stanberry accordingly ordered a cervical spine x-ray [R. 396], of which

revealed mild degenerative spondylosis within Claimant's cervical spine with probable mild degenerative retrolisthesis. [R. 526]. In August and September 2021, PA Stanberry noted Claimant's continued complaints of chronic back pain with intermittent muscle spasms radiating to her neck, left shoulder, and lower back. [R. 384, 388]. On September 13, 2021, Subramaniam Krishnamurthi, M.D., conducted an internal medicine consultative examination at the Agency's request [R. 434-48], of which revealed slightly reduced dorsolumbar flexion, extension, and lateral flexion with pain as well as full but painful left hip and knee movement. [R. 437]. Dr. Krishnamurthi opined that Claimant could (i) lift/carry 20 pounds occasionally and 10 pounds frequently, (ii) sit for 3 hours at a time for a total of 6 hours, (iii) stand for one hour at a time for a total of 3 hours, and (iv) walk for one hour at a time for a total of 3 hours in an 8-hour workday. [R. 438-39].

**B.   Claimant's Mental Health History**

In July 2019, Dian Walston, PA, found Claimant was positive for anxiety and depression. [R. 379]. The following month, PA Walston evaluated Claimant for other specified anxiety disorders, noted she was originally diagnosed with generalized anxiety "many years ago," and prescribed benzodiazepine to treat Claimant's constant feelings of apprehension. [R. 377]. On seven occasions from October 2019 to April 2020, Claimant presented to PA Walston's clinic with anxiety and providers continued her benzodiazepine treatment. [R. 352, 355, 359 362, 365, 368, 371].

In late-April 2020, Claimant presented to PA Stanberry with complaints of anxiety, difficulty concentrating, and forgetfulness. [R. 494-95]. PA Stanberry found

Claimant was suffering from anxiety, low self-esteem, and concentration difficulties. [R. 495]. He prescribed Xanax to treat her anxiety disorder. [R. 495]. On twelve occasions from August 2020 to October 2021, Claimant presented to PA Stanberry's clinic with anxiety, concentration difficulties, depression, sleep disturbances, and/or forgetfulness and providers continued her Xanax treatment. [R. 384, 388, 393, 450, 454, 458-59, 462-63, 472-73, 476, 480, 494-95, 502].

### III.  PROCEDURAL HISTORY

On February 20, 2020, Claimant protectively filed applications for disability insurance benefits and social security income benefits under Title II and Title XVI of the Act. [R. 16, 199-204, 205-214]. Her claims were denied initially and upon reconsideration. [R. 67-69, 89-91]. On November 4, 2021, ALJ Douglas Gabbard conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. [R. 16, 32-62]. The ALJ issued an unfavorable decision on December 17, 2021. [R. 16-25]. The Appeals Council denied review on July 26, 2022 [R. 1-4], rendering the Commissioner's decision final for purposes of further appeal. *See* 20 C.F.R. §§ 404.981, 461.1481.

### IV.  DECISION OF THE ALJ

The ALJ made his decision at step five of the sequential evaluation. He determined that, while Claimant suffered from severe impairments, her conditions did not meet a listed impairment under the Agency's regulations. [R. 19-20]. After consulting with a vocational expert, the ALJ found Claimant unable to perform her past relevant work as a CNA; however, he determined she was able to perform the

requirements of occupations such as "Hand Packager," "Stores Laborer, or "Industrial Cleaner." [R. 23-24]. Ultimately, the ALJ concluded Claimant had not been under a disability from November 20, 2019 through the date of his decision. [R. 24-25].

## V.   ERRORS ALLEGED FOR REVIEW

On appeal, Claimant asserts the ALJ erred in (1) failing to properly evaluate the medical opinion evidence regarding her physical health; and (2) failing to develop the record regarding her mental health.

### A.   Evaluation of the Medical Opinion Evidence

Claimant first challenges the ALJ's RFC determination, contending he erred in evaluating the medical opinions of treating and non-treating providers. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" *Id*. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and PAMFs by considering a list of factors. *See id*. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or PAMFs (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements)." *Id*. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). If an ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Here, the ALJ made the following RFC determination:

> Due to the claimant's Degenerative Disc Disease and Scoliosis, I find it prudent to limit her to occasionally climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling. Finally, I note that the claimant's combined impairments support finding her limited to Medium Exertional Level[1] with the above additional limitations. I find no substantial support for hand, finger, or shoulder limitations, a sit/stand option, or other functional restrictions.

[R. 23]. As Claimant correctly explains, the ALJ first found both PAMFs to be unpersuasive as these sources found insufficient evidence to make an impairment determination on Claimant. [R. 22]. He justified rejecting the PAMFs by stating they were inconsistent with subsequent opinions of "some treatment providers" and Dr.

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); *see also id.* § 416.967(c).

Krishnamurthi, "who noted the claimant did have some pain symptoms on range of motion." [R. 22]. The ALJ, however, concurrently rejected Dr. Krishnamurthi's opinion based on a lack of supportability:

> I find the assessment of the claimant provided by Doctor Krish[n]amurthi is unpersuasive. Dr. Krish[n]amurthi opined that the claimant was limited to Light Exertional Work[2] with frequent operation of foot controls, avoiding hazards, and without climbing ladders, ropes, and scaffolds. His opinion is poorly supported by his examination notes which indicate that aside from slightly reduced range of motion in her back, left hip, and knee, the claimant was normal on examination such as an absence of muscle atrophy and normal gait.

[R. 22]. He further justified his rejection of Dr. Krishnamurthi's opinion by setting forth the following inconsistencies:

> [Dr. Krishnamurthi's] opinion is also inconsistent with the claimant's conservative treatment as detailed throughout the longitudinal record of evidence, and the opinion of claimant's own treating provider that she had no impairments[3] – an[] opinion which I also find unpersuasive.

[R. 22]. No explanation was provided to justify rejecting this treating source opinion.

In assessing these medical opinions, the ALJ improperly evaluated records that were consistent with the opinions of Dr. Krishnamurthi and Claimant's treating providers. While the ALJ did note that some of treating source opinions were consistent with the opinion of Dr. Krishnamurthi, he concluded all these opinions were unpersuasive [R. 21-23]. Accordingly, the ALJ failed to analyze and discuss,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A limitation to light work would result in Claimant being deemed disabled pursuant to 20 C.F.R., pt. 404, subpt. P, app. 2, § 202.06.

[3] Notably, this opinion (i) is referenced by the ALJ as a "recent examination" although it occurred nearly one year prior to the date of his decision [R. 21 (*citing* R. 454)]; (ii) was completed by a colleague of Claimant's primary treating provider during an appointment where she solely presented for medication refills [R. 454]; (iii) preceded multiple opinions where Claimant's primary provider found impairments, including degenerative disc disease. *See e.g.*, [R. 384, 388, 393].

*inter alia*: (i) instances in which Claimant presented with pain and/or muscle spasms in her back and/or neck [R. 329, 333, 388, 393, 458, 462, 472, 484, 502, 510]; (ii) medications, in addition to Mobic, that were prescribed to Claimant for pain management;[4] (iii) instances in which Claimant presented with pain associated with arthritis in the joints of her fingers, hands, and/or shoulders [R. 335, 359, 362, 379, 384, 393, 476, 495, 505, 516]; and (iv) instances in which Claimant presented with numbness and/or tingling in her upper extremities [R. 329, 333, 336]. Additionally, the ALJ did not discuss any examination notes – apart from one opinion with inconsistent findings – from Claimant's treating providers when assessing the consistency of Dr. Krishnamurthi's opinion. [R. 22].

Moreover, the omission of a discussion regarding Claimant's non-severe mental impairments demonstrates the ALJ failed to provide a narrative discussion explaining the evidentiary basis and rationale for the RFC assessment as required by Social Security-Ruling 96-8p, 1996 WL 374184 at *2 (July 2, 1996). For instance, the ALJ did not explain what, if any, work-related limitations resulted from Claimant's non-severe depression, anxiety, and related disorders. Additionally, the ALJ omitted skill level, task, instruction, and social limitations from the RFC determination without explaining why Claimant's non-severe depression, anxiety, and related disorders did not impose any limitations. Absent a discussion of how Claimant's non-severe mental impairments were accounted for in the RFC

---

[4] *See e.g.*, [R. 356, 363, 392, 395, 399, 404, 505, 514 (cyclobenzaprine), 545-55, 459, 463, 473, 505, 519 (Flexeril), 421 (Toradol)]. In support of finding Dr. Krishnamurthi's opinion to be at odds with Claimant's "conservative treatment" by treating providers, the ALJ reasoned that Claimant only "used over-the-counter ibuprofen and medical marijuana for pain management." [R. 21-22].

10

assessment, or an explanation – other than briefly noting Claimant's mental impairments have been "treated conservatively with medication" that "helps her symptoms" – on why such impairments did not impose any functional limitations, the Court is unable to "credit [the ALJ's] conclusion with substantial evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).

It was error for the ALJ to (i) ignore substantial probative evidence when analyzing the consistency of Dr. Krishnamurthi's and the treating providers' opinions and (ii) fail to credit such consistency. *See Hardman*, 362 F.3d at 681 (noting the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence"); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (internal citations omitted); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (internal citations omitted).

The ALJ accordingly failed to support his RFC assessment with substantial evidence. As discussed above, the ALJ did not apply the correct legal standards when valuating the medical source opinions of Dr. Krishnamurthi and Claimant's treating providers. The decision of the Commissioner is thus not supported by substantial evidence. *Graham v. Kijakazi*, 2022 U.S. Dist. LEXIS 56566, 2022 WL 947148 at *1

(E.D. Okla. Mar. 29, 2022) ("The Magistrate Judge found that correct legal standards were not applied by the Administrative Law Judge in failing to properly evaluate two medical source opinions and the decision of the Commissioner is therefore not supported by substantial evidence.").

### B.  Development of Mental Health Evidence in the Record

Claimant finally contends the ALJ erred in failing to further develop the record regarding her mental health. The PAMFs, according to Claimant, were uninformative and the medical record contained no mental health opinions regarding her functioning capacity. As such, Claimant asserts the ALJ should have obtained a medical expert assessment regarding her mental functioning – particularly the functional impact of her anxiety.

Although the burden to prove disability is on Claimant, a disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raise." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted). The ALJ's duty is limited to fully and fairly developing the record as to material issues. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation omitted). Developing the record may involve ordering consultative examinations and testing. To establish the need for a consultative examination, a claimant must "in some fashion raise the issue sought to be developed, which on its face, must be substantial." *Id*. at 1167 (citations omitted). If a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id*. If counsel does not request a

consultative examination, the Court "will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

As the Commissioner correctly explains, Claimant's counsel (i) did not object to the admission of exhibits on file at the disability hearing [R. 37]; (ii) indicated there was no outstanding evidence to be admitted [R. 38]; (iii) did not object to the ALJ closing the record [R. 38]; (iv) did not request that the ALJ obtain a medical expert assessment regarding Claimant's mental functions; and (v) at the close of the hearing, responded in the negative in response to the ALJ asking whether any issues remained. [R. 61]. In light of the foregoing, it was reasonable for the ALJ to rely on the statements of Claimant's counsel regarding completion of the record. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (noting the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record" and "exhort the ALJ that the case is ready for decision" then "later fault the ALJ for not performing a more exhaustive investigation.").

Nevertheless, the ALJ's duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations may be used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Typically, a consultative examination is required if:

(1)     The additional evidence needed is not contained in the records of your medical sources;

13

> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; [or]
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.

*Id*. § 416.909a(2)(b). None of these bases for ordering a consultative examination exists in the record. The record before the ALJ contained sufficient evidence to evaluate Claimant's anxiety. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). Therefore, the ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

## VI.  CONCLUSION

The decision of the Commissioner finding Claimant not disabled is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of the Social Security Administration should be and is **REVERSED** and the case is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 29th day of March, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

14